[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On or about April 23, 1990 the plaintiffs obtained CT Page 9892 judgment against the defendants John Eichelberg and Marvin Eichelberg, both doing business as Procraft Construction Co. The judgment is in the amount of $17,498.66 plus cost in the amount of $207.20. On or about August 27, 1990, the plaintiffs for a bank execution which was issued on September 25, 1990. This execution was served on Chelsea Groton Savings Bank and was subsequently mailed to the judgment debtor, John Eichelberg on October 5, 1990. On October 10, 1990 the John Eichelberg executed an affidavit of claim of exemption established by law claiming as follows:
1. As to account #503001021, a checking account, $240.60 is claimed to be exempt on the basis that 50% of the monies in this account are from Social Security and Public Assistance benefits.
2. As to account #3001010, a savings account, $13,125.75 is claimed to be exempt on the basis that all monies in this account are from Social Security and Public Assistance benefits.
Connecticut General Statutes Section 52-352b(d) exempts Public Assistance payments from execution. Connecticut General Statutes Section 52-367b captioned EXECUTION AGAINST DEBTS DUE FROM BANKING INSTITUTION, as regards natural person as debtor, also exempts from execution in subsection (a) those debts that are protected from execution by Section 52-352b. In addition to the claim of exemption, there is also a claim by a third party that the bank accounts in question are not owned by the defendant John Eichelberg but rather are owned by the third party Amy Eichelberg, the wife of John Eichelberg.
I. FACTS
The savings account at Chelsea Groton Bank was opened in the name of Amy Eichelberg only, account #3001010, prior to May, 1984. A subsequent passbook for this account with an initial entry of February 11, 1988 shows that account to then be in the name of Amy Eichelberg or, John Eichelberg. Amy Eichelberg is employed as a home health aide. She cares for a brother and a sister at home. Her sister has been receiving Social Security checks since 1983 and her brother has been receiving Social Security checks since 1980. These Social Security checks have been deposited into the savings account at Chelsea Groton Bank, account #3001010 since 1984. Amy Eichelberg also receives monies from the State of Connecticut as wages for home health aide for the care of her brother and sister amounting to $433.00 a month for each of them plus an additional $223.00 a month due to special needs that they have. Her husband John Eichelberg has been totally disabled since CT Page 9893 December 1990. He receives Social Security checks each month that goes into a separate account in his name at the Dime Savings Bank. She put her husband's name on the Chelsea Groton account in case something happened to her. John Eichelberg never put any money into that account. John Eichelberg had a separate account at Chelsea Groton Bank, account #3004141. All monies that are received by Amy Eichelberg from the State of Connecticut and Social Security go into account #3001010. Procraft Construction Co. is a tradename used by her son and husband. Checks bearing the name of Procraft Construction Co. also have been deposited into account #3001010 when her son would ask her to cash a check or borrow money from her and then would pay her back from a Procraft Construction Co. check. Further Amy Eichelberg would deposit some of her own wages into the Chelsea Groton Bank, account #3001010. Her son Marvin Eichelberg had his own account at Chelsea Groton Bank, account #3004995 opened in July, 1988. As of July 6, 1989 that account had a balance of $1,217.11. The Social Security checks that are received for her brother and her sister are each in the monthly amount of $447.00.
The parties have entered into a stipulation dated May 31, 1991 regarding various transactions at the Chelsea Groton Savings Bank, savings account #3001010. A copy of that stipulation is attached to this Memorandum of Decision and is made a part hereof and marked Exhibit A.
A. THE EXEMPTION CLAIM
Connecticut General Statutes 52-367b(j) Determination of Exempt Monies, provides as follows:
 If both exempt and nonexempt monies have been deposited into an account, for the purposes of determining which monies are exempt under this section, the monies most recently deposited as of the time the execution is levied shall be deemed to be the monies remaining in the account.
A review of the Chelsea Groton account #3001010 shows that the balance of $13,175.75 existing in the account was as a result of deposits made between April 11, 1990 and September 15, 1990. During that five month period Amy Eichelberg was depositing into that account the Social Security check in the amount of $420.00 for the benefit of her brother and the Social Security check in the amount of $420.00 for the benefit of her sister together with the Department of Income Maintenance check for special diet for her brother in the amount of $214.00 and the special diet check for the benefit of her sister in the CT Page 9894 amount of $214.00 for total monthly deposits of $1,268.00 for a period of five months for a total of $6,340.00. The court find that in accordance with Section 52-367b(j) that the monies most recently deposited as of the time of the execution is levied consisted of $6,340.00 of exempt funds. Therefore the court holds that $6,340.00 of the balance of the account #3001010 is exempt from execution.
Insofar as checking account #503001021 at Chelsea Groton Savings Bank with a balance of $240.60 is concerned, no evidence was introduced concerning the source of those funds. Section 52-367b(f) provides that the claim of exemption filed by such debtor shall be prima facie evidence at such hearing of the existence of the exemption. Since there was no evidence presented to rebut the prima facie presumption, the court holds that the full $240.60 in the checking account is exempt from execution.
B. THE CLAIM OF AMY EICHELBERG THAT HER HUSBAND, THE DEFENDANT JOHN EICHELBERG IS NOT THE OWNER OF THE SAVINGS ACCOUNT IN QUESTION.
In discussing the question of whether the transfer of an account by one person into joint names constitutes a present gift the court in Bachmann v. Reardon, 138 Conn. 665, 667-668
(1952) stated in part as follows:
 To constitute a valid gift inter vivos of personal property, there must be not only a delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately . . . in determining this intent, the time when the use or the enjoyment of the property comes to the other party is not conclusive of the issue. A gift may be valid even though the original owner's intent is to postpone the enjoyment of the property to a future date. . . . It is essential, however, that the original owner's intent be to pass title or ownership immediately. . . . A question of intent (as to the making of a gift) is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made. . . . The fact that a part of the deposits were made in the plaintiff's name affords the strongest evidence of an intention to make a gift; but that does not necessarily show an intention to make a present gift; it is CT Page 9895 equally consistent with an intention to have the gift take effect at some future time.
This court finds that there was no intention on the part of Amy Eichelberg to make a present gift of the account #3001010 to the defendant John Eichelberg.
This court further finds that there was no intention on the part of Amy Eichelberg that the defendant John Eichelberg have title or ownership to the savings account in question immediately.
The plaintiff makes the following argument in claiming that Amy Eichelberg has not made a valid claim to this account:
 The Plaintiffs suggest that the proper vehicle or determining the rights of Amy Eichelberg, was by virtue of a claim by her in accordance with Connecticut General Statutes Section 52-356b entitled Determination of Interest in Dispute Property. Said Statute provides a remedy for third persons claiming a superior interest in funds, or property claimed by a Judgment Creditor. Said Statute requires the third person make claim within twenty (20) days of service of the Execution and for the court to make a determination of interest pursuant to that section. Connecticut General Statutes Section 52-356c(a). The time period within the stated section has expired, and had expired on the date of hearing, which hearing took place on May 13, 1991, over six (6) months subsequent to the execution being served. The Plaintiffs would therefore suggest that the claimant, Amy Eichelberg, did not property assert any claims that she had with respect to such property within the time frame provided by Statute, and therefore her claim of ownership, superior to that of the Judgment Creditor, should be denied.
 In the event Amy Eichelberg had sought to asset, by virtue of her guardianship, superior rights to the accounts stated, on behalf of Barbara Crouch, and Kaleb Crouch, a similar use of Connecticut General Statutes Section 52-356c, could have been sought by her. No such application, or CT Page 9896 claim was made, and it is therefore the Plaintiffs' position that Amy Eichelberg has no standing before this Court to make such claim at the time of hearing. She is not a party to this action.
The court is not persuaded by that argument.
Section 52-356c(a) provides as follows:
 Where a dispute exists between the judgment debtor or judgment creditor and a third person concerning an interest in personal property sought to be levied on, or where a third person claims that the execution will prejudice his superior interest therein, the judgment creditor or third person may, within 20 days of service of the execution or upon application by the judgment creditor for a turnover order, make a claim for determination of interests pursuant to this section.
This court holds that the reference in Section52-356c(a) to a determination of interest in disputed property refers to personal property levied on under a property execution and not to a bank execution. Section 52-356a(a) specifically exempts from a property execution debts due from a banking institution. The "interest in personal property sought to be levied on" referred to in Section 52-356c(a) is personal property other than debts due from a banking institution.
This court therefore concludes that Amy Eichelberg has a right to maintain her claim for determination of her interest in the bank account in question. This court has already found that any of the deposits made into the savings account at Groton Chelsea account #3001010 from deposits of Procraft Construction Co. were as a result of her son Marvin Eichelberg asking her to cash a check or to borrow money from her which he would then pay back with a Procraft Construction Co. check. This court therefore concludes that all of the funds in the disputed account #3001010 either represent exempt funds or represent funds from earnings of Amy Eichelberg only. This court therefore concludes that savings account #3001010 at the Chelsea Groton Savings Bank is the sole property of Amy Eichelberg and therefore cannot be levied upon by the plaintiffs in satisfaction of their judgment against the defendant John Eichelberg.
AXELROD, J. CT Page 9897
EXHIBIT A
DOCKET NO. CV-89-0512006S SUPERIOR COURT ROBERT SCHEMBRE, ET AL J.D. OF NEW LONDON vs . AT NEW LONDON MARVIN EICHELBERG, D/B/A PROCRAFT CONSTRUCTION CO., ET AL JULY 1, 1991
STIPULATION
The parties in the above captioned matter, do herein stipulate to the following:
1. That the attached checks, deposit forms and other record of banking transactions (Exhibit "A") at Chelsea Groton Savings Bank (Acct. #3001010) are true, correct and complete copies of the records of said depository.
2. That the deposits are to be segregated into the following categories and that the following amounts can be ascribed to such categories:
 Cash Deposits $58,957.40 Unknown $ 9,370.02 Social Security $ 7,272.00
 CT Dept. of Income Maintenance $15,031.20 Transfers $ 5,907.63
 Procraft Construction or Marvin Eichelberg $19,083.41
Amy Eichelberg (Nursing) $ 6,858.07
The foregoing breakdown does not leave the parties in agreement as to the legal significance or lack thereof of said categories.
3. That the attached compilation of the deposits by date and amount partitioned into the aforementioned categories (Exhibit "B") is correct and complete.
THE PLAINTIFF, THE DEFENDANT,
 Jonathan A. Peck Thomas E. Brown Peck Tuneski, P.C. Its Attorney Its Attorney CT Page 9898
Exhibit "B"
A. Eichelberg (Nursing)
5/14/87 $ 115.56 5/14/87 $ 69.00 6/15/87 $ 40.00 8/4/87 $ 224.00 8/20/87 $ 224.00 8/31/87 $ 350.51 8/31/87 $ 578.00 10/20/87 $1,000.00 10/20/87 $1,200.00 3/4/88 $ 256.00 6/15/88 $ 280.00 10/15/88 $ 588.00 1/27/89 $ 300.00 11/2/89 $ 410.00 12/4/89 $ 446.00 2/15/90 $ 300.00 7/9/90 $ 360.00 7/23/90 $ 117.00 --------- TOTAL $6,858.07
U.S. Treasury (Social Security)
4/1/87 $ 340.00 4/1/87 $ 340.00 6/11/87 $ 340.00 6/11/87 $ 340.00 4/30/88 $ 354.00 4/30/88 $ 354.00 10/3/88 $ 354.00 10/3/88 $ 354.00 11/1/88 $ 354.00 11/1/88 $ 354.00 9/5/89 $ 368.00 9/5/89 $ 368.00 12/4/89 $ 368.00 12/4/89 $ 368.00 2/5/90 $ 386.00 2/5/90 $ 386.00 3/2/90 $ 386.00 3/2/90 $ 386.00 8/31/90 $ 386.00 8/31/90 $ 386.00 --------- TOTAL $7,272.00 CT Page 9899
Procraft/Marvin Eichelberg
4/14/87 $7,000.00 5/14/87 $ 214.00 5/28/87 $ 520.00 5/28/87 $ 772.50 6/15/87 $3,500.00 6/15/87 $2,520.00 8/4/87 $ 407.50 3/4/88 $ 186.83 9/14/89 $3,378.00 7/9/90 $ 439.00 8/3/90 $ 72.79 8/31/90 $ 72.79 --------- TOTAL $19,083.41
CASH DEPOSITS
4/2/87 $ 500.00 5/1/87 $1,000.00 5/13/87 $7,200.00 9/1/87 $1,315.00 9/10/87 $1,000.00 10/2/87 $1,200.00 10/30/87 $1,751.00 11/2/87 $1,000.00 12/1/87 $1,200.00 12/11/87 $ 400.00 12/28/87 $ 850.00 12/31/87 $1,500.00 1/16/88 $ 500.00 2/1/88 $ 600.00 3/3/88 $1,200.00 3/4/88 $1,200.00 4/6/88 $ 140.00 4/22/88 $ 910.00 5/7/88 $ 500.00 5/21/88 $ 500.00 5/26/88 $ 500.00 5/26/88 $ 1.00 5/27/88 $ 300.00 6/10/88 $1,000.00 6/15/88 $ 300.00 6/17/88 $ 400.00 6/28/88 $ 440.00 7/7/88 $ 440.00 8/3/88 $1,864.98 9/26/88 $ 400.00 9/30/88 $ 500.00 CT Page 9900 10/15/88 $ 100.00 10/22/88 $ 400.00 10/28/88 $1,000.00 10/29/88 $ 600.00 12/2/88 $1,000.00 12/5/88 $ 500.00 12/7/88 $3,587.42 12/17/88 $ 200.00 12/23/88 $5,665.00 1/3/89 $ 625.00 2/2/89 $1,000.00 2/6/89 $ 420.00 2/7/89 $ 200.00 2/27/89 $1,000.00 3/2/89 $1,300.00 3/15/89 $ 500.00 3/31/89 $1,000.00 5/15/89 $1,000.00 5/18/89 $1,780.00 6/2/89 $ 600.00 7/17/89 $1,368.00 9/30/89 $1,500.00 10/12/89 $ 600.00 10/28/89 $ 350.00 1/2/90 $ 800.00 7/9/90 $ 200.00 7/21/90 $ 500.00 8/6/90 $ 300.00 9/15/90 $ 250.00 --------- TOTAL $58,957.40
CT-DIM
4/1/87 $ 433.00 6/11/87 $ 433.00 6/11/87 $ 433.00 10/2/87 $ 214.00 10/2/87 $ 214.00 10/2/87 $ 433.00 10/2/87 $ 433.00 4/30/88 $ 433.00 4/30/88 $ 200.00 10/3/88 $ 205.40 10/3/88 $ 205.40 11/1/88 $ 205.40 11/1/88 $ 205.40 9/5/89 $ 433.00 9/5/89 $ 197.60 9/5/89 $ 197.60 CT Page 9901 11/2/89 $ 433.00 11/2/89 $ 197.60 11/2/89 $ 197.60 11/2/89 $ 433.00 12/4/89 $ 197.60 12/4/89 $ 433.00 12/4/89 $ 433.00 12/4/89 $ 197.60 1/5/90 $ 197.00 1/5/90 $ 197.00 1/5/90 $ 433.00 1/5/90 $ 433.00 2/5/90 $ 197.00 2/5/90 $ 197.00 2/5/90 $ 433.00 2/5/90 $ 433.00 3/2/90 $ 197.00 3/2/90 $ 433.00 3/2/90 $ 197.00 3/2/90 $ 433.00 4/5/90 $ 179.00 4/5/90 $ 433.00 4/5/90 $ 433.00 4/5/90 $ 197.00 8/3/90 $ 223.00 8/3/90 $ 223.00 8/3/90 $ 433.00 8/31/90 $ 433.00 8/31/90 $ 433.00 10/4/90 $ 433.00 10/4/90 $ 433.00 ---------- TOTAL $15,031.20
UNKNOWN
6/15/88 $2,300.00 6/30/89 $1,200.00 10/19/89 $ 304.00 10/28/89 $ 354.00 11/6/89 $1,000.00 6/4/90 $ 500.00 7/19/90 $1,000.00 7/23/90 $ 206.86 8/3/90 $ 517.16 8/20/90 $ 800.00 8/31/90 $ 223.00 8/31/90 $ 223.00 9/15/90 $ 100.00 10/4/90 $ 223.00 CT Page 9902 10/4/90 $ 223.00 10/4/90 $ 196.00 --------- TOTAL $9,370.02
TRANSFERS
9/12/87 $1,571.63 12/8/87 $ 500.00 11/5/88 $2,500.00 5/4/90 $1,000.00 8/31/90 $ 336.00 --------- TOTAL $5,907.63